UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANGELA CARMAN, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:11-CV-1824 |
| § | |
| MERITAGE HOMES CORPORATION, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Pending before the Court is the defendants', Meritage Homes Corporation and Meritage Homes of Texas, LLC (collectively, "Meritage"), motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docket No. 42). The plaintiffs', Angela Carman, Lori Cochran, Judith Doyle, Cecelia Rice and Sherri Woodlee (collectively, "the plaintiffs"), response (Docket No. 59) and Meritage's reply (Docket No. 61). On February 4, 2014, the Court ordered the parties to submit supplemental briefing on unaddressed issues (Docket No. 62). The parties complied (Docket Nos. 63 and 64). Having reviewed the parties' submissions, the record and the applicable law, the Court finds and concludes as follows.

### II.   FACTUAL BACKGROUND

Meritage builds and sells new homes in various communities across the United States, including in Houston and Dallas, Texas. The plaintiffs in this case were employed by Meritage as part-time sales assistants for various periods between 2005 and 2010. Sales assistants typically worked on days that the sales associates for communities were not scheduled and they generally worked alone. Sales assistants ordinarily worked two to three days per week, and in addition to working their scheduled days, they occasionally filled in for vacationing or otherwise absent sales assistants or sales associates in other communities.

In 2006, Meritage implemented ExponentHR—an electronic time reporting system whereby employees self-report their work hours. In 2007, and again in 2009, Meritage issued Employee Handbooks. Meritage required all employees to acknowledge in writing that they received and agreed to comply with the provisions in the Handbooks. Among other things, the Handbooks required all employees to maintain a record of the total hours they worked each day. Employees were also required to accurately report their time in ExponentHR, accounting for all regular and overtime hours worked, absences, late arrivals, early departures and meal breaks. Further, the Handbooks prohibited employees from beginning work early, finishing late, working through meal breaks or performing any other extra or overtime work unless it was explicitly authorized and they recorded that time in ExponentHR. The Handbook also provided an avenue for employees to report any instruction from a colleague or supervisor to incorrectly report hours worked. All employees were trained how to report their hours in ExponentHR.

Angela Carman was a sales assistant from January 2005 until December 2010. She was typically scheduled to work two days a week, either Monday and Tuesday or Thursday and Friday. Carman claims that she was only allowed to report (and only compensated for) the time that the sales office was scheduled to be open – 10 a.m. to 7 p.m. She further alleges that she typically spent thirty minutes before 10 a.m. readying the office for opening, thirty minutes after 7 p.m. closing down the office, at least once a week would have to spend about an hour with customers who stayed past closing, and that she came in on the weekend once or twice a month. She claims she was not paid for any of these hours.

Lori Cochran was a sales assistant from August 2006 until August 2009. She was typically scheduled to work four days per week—two weekdays when the sales associate was off and on the weekends. She claims that David Modlin, the division president, told her not to submit more than thirty hours per week, and that she did not report an additional twenty hours per week that she worked. According to Cochran, those twenty hours consisted of time spent opening and closing the

office, working through lunch, working late to assist clients and that she was never paid for weekend time.

Judith Doyle was a sales assistant from January 2005 until December 2010. She claims that she was not paid for the fifty to sixty minutes she spent opening and closing the office. She also claims that she did not report working through lunch each day and staying with customers for two hours after the office closed, which happened twice a week. Doyle estimates that these activities amounted to thirteen hours of work per week for which she was not compensated.

Cecelia Rice was employed as a sales assistant from June 2005 until November 2007, and then again from December 2008 until December 2010. She worked for Meritage as a sale associate from November 2007 until December 2008. As a sales assistant, Rice typically worked Tuesday through Friday, and occasionally on weekends. She claims that during her time as a sales assistant she worked ten-hour days but was only allowed to report eight hours of time. These additional hours consisted of opening and closing the office, working through lunch, and working after the office closed.

Sherri Woodlee was employed as a sales assistant from April 2006 until November 2007, as a sales associate from November 2007 until January 2008, and then again was a sales assistant from February 2008 until April 2009. She then moved from Houston to Dallas and resumed working for Meritage as a sales assistant in September 2009. She was in that position until September 2010. Woodlee typically worked Tuesday through Thursday. She claims that she only reported working when the office was scheduled to be open, but that she actually worked two to four hours more than that each day. During these additional hours, she spent about an hour opening and closing the office, she worked through lunch, and she worked up to two hours after the office closed.

Arising out of their experience as Meritage employees, the plaintiffs filed this suit to recover unpaid wages, including overtime, allegedly due under the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. § 201 *et seq.* None of the plaintiffs are currently employed by Meritage.

### III. CONTENTIONS OF THE PARTIES

#### A. Meritage's Contentions

Meritage argues that the plaintiffs cannot establish that they performed any uncompensated work, or the amount and extent of any such work by "just and reasonable inference." The time records the plaintiffs created contradict their assertions that they were only allowed to report work that occurred during Meritage's normal business hours, that they could not report more than thirty hours per week, and that they always worked through the lunch hour. Meritage argues that the plaintiffs simply reconcile these inconsistencies to "special occasions" or otherwise cannot explain them. Meritage contends that because the plaintiffs have no records to support the amount and extent of any allegedly uncompensated work, and their own allegations contradict their self-reported time records, they cannot prove that uncompensated time by just and reasonable inference. Moreover, Meritage argues that because the plaintiffs admit that they never complained of or reported any unpaid hours to Meritage, they are unable to demonstrate that Meritage had actual or constructive knowledge that they were working and not being compensated. Finally, Meritage claims that the plaintiffs cannot prove that Meritage willfully violated the FLSA.

#### B. The Plaintiffs' Contentions

The plaintiffs argue that their detailed descriptions of the amount and extent of their claimed off-the-clock work, corroborated by emails sent by them outside the hours reflected in their time records, satisfies their burden to establish the amount of their off-the-clock work by a just and reasonable inference. They further argue that Meritage is not entitled to summary judgment simply because each plaintiffs' estimate of her uncompensated time is somewhat inconsistent with their self-reported time records. The plaintiffs also contend that because they had been specifically instructed by their superiors to underreport their hours, and because it was "common knowledge" that sales assistants were not to report hours worked before or after their scheduled shifts, Meritage had actual or constructive knowledge that the plaintiffs were performing off-the-clock work. They argue that

those same facts would support a finding that Meritage willfully failed to compensate them for the work they performed. Because those facts are disputed, they contend that summary judgment on the issue is inappropriate.

## IV. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots*

*Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, (1986)).

## V.     ANALYSIS AND DISCUSSION

The FLSA requires employers engaged in commerce to pay certain minimum hourly wages to its employees. 29 U.S.C. § 206. The statute also requires employers to pay one and one-half times the regular rate to non-exempt employees for all hours worked in excess of forty hours per week. *Id.* at §§ 207(a), 213. The FLSA, by its plain terms, only provides a private right of action when an employee's hourly wage is below the statutory minimum, when the employer has failed to pay an employee time and a half wages for a workweek longer than forty hours, or when an employer retaliates against an employee for participating in an action brought under the Act. *Id.* at § 216(b). In

this suit, the plaintiffs seek not only minimum wages and overtime compensation, but *all* unpaid wages.

### A. Gap Time and Minimum Wage Claims

"A gap-time claim," also referred to as a straight time claim, "is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). The Fifth Circuit has not addressed the viability of gap time claims, but at least three district courts in this circuit have held that "[c]laims for unpaid straight-time wages that do not implicate the minimum wage or overtime pay requirements are generally not cognizable under the FLSA." *Valcho v. Dallas Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 811 (N.D. Tex. 2009); *see also Newsom v. Carolina Logistics Servs., Inc.*, 2012 WL 3886127, at *1 (N.D. Miss. Sept. 6, 2012); *Green v. Dallas Cnty. Schs.*, 2005 WL 1630032, at *3 (N.D. Tex. July 6, 2005). These cases ultimately rely on the Fourth Circuit's opinion in *Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1284 (4th Cir. 1996), which held that as long as an employee has been paid at least the minimum wage, recovery for gap time hours is only available for weeks in which the employee worked overtime. ("Absent a minimum wage/maximum hour violation, we find no remedy under the FLSA for pure gap time claims."). The Fourth Circuit, in turn, relied on case law, legislative intent, and three Department of Labor interpretations of the FLSA—29 C.F.R. §§ 778.315[1], 778.317[2] & 778.322[3]— to come to its conclusion. *Id.*

---

[1] 29 C.F.R § 778.315 reads in relevant part: "Overtime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard. This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid."

[2] 29 C.F.R § 778.317 reads: "An agreement not to compensate employees for certain nonovertime hours stands on no better footing since it would have the same effect of diminishing the employee's total overtime compensation. An agreement, for example, to pay an employee whose maximum hours standard for the particular workweek is 40 hours, $5 an hour for the first 35 hours, nothing for the hours between 35 and 40 and $7.50 an hour for the hours in

The Second Circuit went even further and held that "so long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week." *Lundy*, 711 F.3d at 116. In other words, plaintiffs in the Second Circuit that have been paid at least the minimum wage cannot recover for allegedly unpaid hours below the forty hour threshold, regardless if overtime was worked. The court dismissed as unpersuasive the interpretative guidance upon which the *Monahan* court relied. *Id.* at 116-17 ("[T]he Department of Labor provides no statutory support or reasoned explanation for [its] interpretation [of the FLSA]."); *see also Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108, at *13 (W.D. Wisc. Apr. 11, 2011) ("[A]lthough the [Department of Labor] regulations provide interpretation for applying the overtime and minimum wage requirements, they cannot create new causes of action for uncompensated straight-time."). The Second Circuit correctly observed that the text of the FLSA requires employers to pay minimum and overtime wages but does not provide a recovery for gap time hours. *Id.* at 116. Moreover, the *Espenscheid* court astutely noted that regulation 778.317 is erroneous. 2011 WL 10069108, at *12 (pointing out that an employer's failure to pay an employee for some non-overtime hours does not have "the effect of diminishing the employee's total overtime compensation," but rather "diminishes the employee's *overall* compensation," and stating, "there is no language in the FLSA creating a cause of action for diminished overall compensation") (emphasis in original) (internal quotation omitted).

---

excess of 40 would not meet the overtime requirements of the Act. Under the principles set forth in § 778.315, the employee would have to be paid $25 for the 5 hours worked between 35 and 40 before any sums ostensibly paid for overtime could be credited toward overtime compensation due under the Act. Unless the employee is first paid $5 for each nonovertime hour worked, the $7.50 per hour payment purportedly for overtime hours is not in fact an overtime payment."

[3] 29 C.F.R § 778.322 reads in relevant part: "In weeks in which no overtime is worked only the provisions of section 6 of the Act, requiring the payment of not less than the applicable minimum wage for each hour worked, apply so that the employee's right to receive $5.71 per hour is enforceable only under his contract. However, in overtime weeks the Administrator has the duty to insure the payment of at least one and one-half times the employee's regular rate of pay for hours worked in excess of 40 and this overtime compensation cannot be said to have been paid until all straight time compensation due the employee under the statute or his employment contract has been paid."

This Court respectfully disagrees with our sister courts in the Fifth Circuit, and now holds that so long as section 206 is not violated, an employee may not recover for straight time claims under the FLSA. This is so even when that employee has worked overtime. The FLSA provides a private right of action for violations of the minimum wage and overtime pay provisions. In this action, each plaintiff concedes that her average hourly wage was commensurate with the federal minimum wage during her time as a Meritage employee.[4] *See* Docket No. 63. If the plaintiffs wish to recover for unpaid straight time wages, they must look to state employment and contract law. Accordingly, the Court grants Meritage summary judgment on the plaintiffs' minimum wage and gap time claims.

### B. Overtime Wage Claims

An employee bringing a claim under the FLSA for unpaid overtime wages must establish that she performed work for which she was not compensated. *Harvill v. Westward Commc'n, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). To prevail on their claim for unpaid overtime, the plaintiffs must prove: (1) the existence of an employment relationship; (2) that they were engaged in commerce or employed by an enterprise engaged in commerce; (3) that the defendant failed to pay them overtime; and (4) that they are owed the amount claimed by a just and reasonable inference. *See* 29 U.S.C. § 207(a); *see also Jones v. Willy, P.C.*, 2010 WL 723632, at *2 (S.D. Tex. Mar. 1, 2010) (Lake, J.) (citing *Harvill*, 433 F.3d at [sic] 441).

---

[4] The plaintiffs urge the Court to use the hour-by-hour method of calculation rather than the average hourly wage calculation. The hour-by-hour method, adopted by the court in *Norceide v. Cambridge Health Alliance*, 814 F.Supp.2d 17, 25 (D. Mass. 2011), provides that every hour that a plaintiff alleges she was uncompensated means her wage for that hour was $0, and thus violated the statutory minimum wage. The average hourly wage calculation begins with the compensation earned in a workweek and divides that figure by the number of hours worked that week, equaling the effective hourly wage. *See, e.g., Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960). It is important to note that *Lundy* relied, in part, on *Klinghoffer*, which adopted the average hourly wage calculation. In as much as this Court's holding on gap time claims rests on *Lundy*, and because the Court finds the rationale of the District of Columbia Circuit persuasive, the Court now adopts the average hourly wage calculation. *See Dove v. Coupe*, 759 F.2d 167, 172 (D.C. Cir. 1985) (reversing the lower court for employing a period shorter than the workweek to measure compliance with the FLSA minimum wage provision).

That the first element is satisfied is undisputed. Therefore, all each plaintiff need prove is that she was "employed" by Meritage during these overtime hours, that she in fact performed work for which she was not compensated, and produce sufficient evidence to establish "the amount and extent of that work as a matter of just and reasonable inference." *Harvill,* 433 F.3d at 441 (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). The plaintiffs were "employed" by Meritage during those overtime hours if Meritage "had knowledge, actual or constructive, that [they were] working." *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (citing *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)).[5] If Meritage was neither aware nor on notice that the plaintiffs were working overtime, then no violation of the FLSA's overtime provision has occurred. *Id.* ("An employer who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation. … [However], if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay the overtime hours is not a violation of § 207.") (internal quotation omitted). Meritage does not claim to have paid any plaintiff for her unreported overtime. Therefore, if each plaintiff establishes the amount and extent of her unpaid overtime by just and reasonable inference, she has satisfied her burden.

    i.    **Angela Carman**

The Court is of the opinion that Carman has pointed to a genuine dispute of material fact as to whether Meritage was aware that she was working unreported overtime. Meritage attests that Carman was informed of the timekeeping policy and trained how to properly record her time, and it

---

[5] "Constructive knowledge exists if an employer 'exercising reasonable diligence' would become aware that an employee is working overtime." *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F.Supp2d 528, 544 (S.D. Tex. 2011) (Harmon, J.) (citing *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009).

was therefore unaware that Carman was working unreported overtime.[6] However, there is deposition testimony that Carman's supervisors—sales managers—instructed her not to report the time she spent working before and after the model home was scheduled to be open. Viewing the evidence in the light most favorable to Carman, a reasonable factfinder could conclude that Meritage had knowledge that Carman was working unreported overtime. *See Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 828 (5th Cir. 1973) (holding that the company could not disclaim knowledge of unreported overtime when the immediate supervisors of the plaintiffs had essentially instructed them not to report hours over certain limits).

The Court is also of the opinion that Carman has presented sufficient evidence to establish the amount and extent of her unpaid overtime hours. Her sworn testimony and accompanying evidence sufficiently detail when and how many additional hours she worked each month. *See Prince v. MND Hospitality, Inc.*, 2009 WL 2170042, at *6 (S.D. Tex. July 20, 2009) (holding that description was sufficiently detailed); *cf. Harvill*, 433 F.3d at 441 (holding that mere assertions of unpaid time are insufficient). Although portions of her testimony are contradicted in some respects by her time records,[7] whether those inconsistencies discredit all of her attestations is a credibility issue for the factfinder. Her reported time records, coupled with her testimony and documentary evidence, are enough for a jury to find that there were weeks when she worked unpaid overtime hours. Accordingly, Meritage's motion for summary judgment on Carman's overtime claim is denied.

    ii.   **Lori Cochran**

---

[6] Meritage required its employees to read the Employee Handbook and sign acknowledgement forms indicating that they received and agree to comply with the Handbook. Meritage has submitted the forms signed by Woodlee, Rice, and Doyle, but has not submitted signed acknowledgement forms for Carman or Cochran.

[7] For example, Carman attests that she was not permitted to report any time she spent working after 7 p.m., but her time sheets indicate at least twenty-six occasions when she reported (and was paid for) working past 7 p.m. However, because, on average, Carman worked two days per week and worked at Meritage for nearly five years, twenty-six instances of reported time does not wholly contradict her testimony.

The summary judgment evidence submitted by Cochran creates a fact issue as to whether Meritage was aware she worked overtime hours for which she was not compensated. Although Meritage submitted evidence that Cochran was trained how to record her time and informed of the timekeeping policy, Cochran has provided uncontroverted testimony that David Modlin, the Meritage Division President, told her not to submit more than thirty hours per week. She has also testified that on three occasions she was asked not to properly record all of her work hours and instead move some of her reported time to a different week. Although Cochran's time sheets conflict with her allegations in a significant way, [8] the Court finds this to be a fact and credibility issue appropriately resolved by the factfinder. Therefore, the Court denies Mertiage's motion for summary judgment on Cochran's overtime claim.

### iii.     Judith Doyle

Similarly, the Court finds that Doyle has satisfied her summary judgment burden. During her deposition, she testified that Human Resources instructed her not to report all of her time.[9] She also testified that her immediate sales associate supervisor knew she was not reporting all of her hours and, in fact, may have instructed her not to accurately report her time. Furthermore, Doyle has provided detailed evidence establishing the amount and extent of her uncompensated overtime work. Although Doyle may not ultimately be successful in this suit, on a motion for summary judgment a district court is not permitted to weigh the evidence; it only determines whether the evidence presents a sufficient disagreement warranting resolution by a jury. Finding such disagreement, Meritage's motion for summary judgment on Doyle's overtime claim is denied.

---

[8] For example, Cochran claims that she was prohibited from reporting more than thirty hours per week, always worked through lunch and was never paid for that time, and was never paid for her weekend work. Her time records indicate that she was paid for working more than thirty hours per week on 53 separate occasions, was paid for working through lunch at least 96 times, and was paid for working on the weekend on no less than 121 occasions.
[9] Contrary to Meritage's assertion, the cited portion of Doyle's deposition testimony does not indicate that she reversed her position that Human Resources instructed her not to fully report her time.

### iv. Cecila Rice

Rice has not provided evidence sufficient to withstand summary judgment on her overtime claim. Regardless of whether Meritage knew that she was working unreported overtime hours, it is clear that Rice cannot establish the amount and extent of her hours by just and reasonable inference. Her initial testimony regarding when and how often she worked unreported hours is sufficiently detailed. However, in her deposition, Rice admits that she did not always work ten hours per day, she did not always arrive at work before 10 a.m., she did not always work through lunch, she did not always stay after closing, and she occasionally rearranged her schedule so as to arrive late or leave early. These admissions, coupled with the time sheets Rice submitted which also contradict her allegations, negative any reasonable inference that could be drawn from her other testimony. *See Harvill*, 433 F.3d at 441 (quoting *Anderson*, 328 U.S. at 687-88; *see also Widder v. Tex. A&M Univ. Corpus Christi*, 2012 U.S. Dist. LEXIS 122907, at *3 (S.D. Tex. Aug. 29, 2012) ("The evidence in the record was so contrary to Plaintiffs' version of events that no reasonable jury could have found in their favor.") It would be impossible for a factfinder to find which weeks, if any, Rice worked uncompensated overtime hours. Accordingly, the Court grants Meritage summary judgment on Rice's overtime claim.

### v. Sherri Woodlee

Woodlee's claim suffers from the same deficiency as Rice. Woodle testified that no one required her to perform tasks before opening the model home at 10 a.m., she did not always arrive at work before 10 a.m., she did not always work through lunch, she did not always stay after closing, and she was never reprimanded for reporting time worked outside the official showing hours. Even if Woodlee could establish that Meritage knew she was working overtime hours, her own testimony and self-reported timesheets so completely contradict her allegations that a factfinder would be unable to determine which weeks, if any, she incurred overtime and the number of overtime hours logged. Consequently, the Court awards Meritage summary judgment on Woodlee's overtime claim.

### C. Willfulness

Whether a particular FLSA violation was "willful" determines the statute of limitations applicable to the violation. 29 U.S.C. § 255(a). If a violation was willful, the three-year statute of limitations applies; if a violation was not willful, the two-year statute of limitations applies. *Id.* "The standard for determining willfulness is whether the employer either knew or showed reckless disregard for whether his conduct violated the FLSA." *Reich v. Tiller Helicopter Services, Inc.*, 8 F.3d 1018, 1036 (5th Cir. 1993) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). Section Three of the Meritage Employee Handbook, entitled, "Payroll and Time Reporting," states, "Meritage employees are compensated based on employee classifications which comply with" the "Fair Labor Standards Act." This alone is enough to demonstrate that Meritage knew the requirements of the FLSA. The sworn testimony of the plaintiffs, along with their documentary evidence, is sufficient for a reasonable jury to find that Meritage willfully violated the FLSA. As such, the Court denies the motion for summary judgment on the issue.

### VI. CONCLUSION

For the foregoing reasons, the Court DENIES Meritage's motion for summary judgment as to the claims of Angela Carman, Lori Cochran and Judith Doyle, and GRANTS the motion as to the claims of Cecelia Rice and Sherri Woodlee.

**It is so ORDERED.**

SIGNED on this 28th day of February, 2014.

_____
Kenneth M. Hoyt
United States District Judge